# John P. Weiss v. J. Henry Whittemore and another.

*Libel: Declaration: Matter of inducement: Innuendo: Certainty.* A declaration in an action of libel, for the publication of an article that does not mention the plaintiff by name, but refers only to the agent for the sale of the Steinway piano, who had also been previously agent for the sale of both that and the Knabe piano, which contains matter of inducement showing with reasonable certainty that plaintiff was such agent, and the proper innuendoes, is held not open to the objection on demurrer that it fails to show with sufficient certainty, that the article was published of and concerning the plaintiff with reference to his trade and business.

It would be unnecessary for the declaration to allege that no other person had been such agent, as no other person would be presumed, on demurrer, in the absence of any allegation to that effect, to have been such agent. A declaration is never required to negative every possible counter implication.

*Libel: Declaration: Damages: Agency: Salary.* An allegation that the plaintiff had been and was engaged in the business of such agency, and had thereby acquired great gains and profits, and that he was, by the publication in question, greatly injured in his said trade and business, and has lost and been deprived of divers great gains and profits in his said business, which would, but for such publication, have arisen and accrued to him, etc., is not applicable to an agent on a salary, but imports an agency in which he derived a part of the profits or a commission on the sales, and sufficiently indicates the damages for which a recovery is sought.

*Libel: Loss of trade: Declaration.* The general allegation of the loss of trade is sufficient in ordinary cases of libel, without setting out the names of the customers driven away or lost; and it may be supported by evidence of such general loss.

*Libel: Agency: Declaration: Loss of profits: Allegation of damages.* Whether, where the dismissal from employment as agent is the special injury complained of, the words to be libelous must impute some charge or matter in relation to the plaintiff's business, trade or vocation, which if true would render him unworthy of employment:—*Quære?*

But where the substance of the alleged injury is that his income and profits from the business of an agency have been reduced by the libel complained of, it is enough to allege a false and malicious publication of language concerning him or his affairs which, as a necessary or natural and proximate consequence, occasions such pecuniary loss to him, and that such loss in fact resulted.

*Libel: Declaration.* Where the libel complained of is a statement in substance that the plaintiff, who is now the agent for the sale of the Steinway piano alone, but had formerly been the agent for the sale of both that and the Knabe piano, had in every instance while holding such double agency recommended the Knabe piano as the best, and advised his customers to buy that as being superior in every respect to the other and to all others, an allegation that the Knabe piano was not in fact the best is not essential.

*Libel: Publication: Newspaper: Malice: When actionable per se.* Such a publication by the agents for the sale of the Knabe piano, after the plaintiff had given it up, in a newspaper of wide circulation in the city where the plaintiff and defendants are both doing business, with the design of placing the plaintiff before the public, and before customers, in a false, ridiculous and discreditable attitude, and of diminishing his sales of the Steinway, and promoting

the sales of the Knabe piano, is libelous, and when false in fact and malicious, is actionable in itself.

*Slander.* Whether or not a verbal slander in the same words would be actionable without proof of special damage:—*Quære?*

*Heard and decided November 5.*

Error to Wayne circuit.

The declaration was as follows:

"For that, whereas, the plaintiff herein was for a long space of time, to wit: from the year 1866 to the year 1869, the general agent for the state of Michigan for the sale of the Knabe piano, and also for the sale of the Steinway piano, which latter is sometimes called the 'King,' and is also sometimes called the 'King of Pianos,' and had the sole and exclusive right of sale of both of said pianos for the city of Detroit, in the county and state aforesaid, for the space of time aforesaid; that in the year 1869, afore-said, the plaintiff herein ceased to act as agent for the sale of the Knabe piano, but continued to act as agent for the sale of the Steinway piano aforesaid, and has ever since so continued to act as agent for the sale of said Steinway piano, and at the time of committing of the grievances by the said defendants hereinafter mentioned, was and now is acting as the agent for the sale of said Steinway pianos, and had carried on the said business as agent for the Steinway piano aforesaid with great credit and reputation, and had in the way of his aforesaid trade and business, as agent for the sale of the Steinway piano aforesaid, acquired great gains and profits, and was, up to the time of the commission of the grievances by the said defendants hereinafter mentioned, daily and honestly acquiring great gains and profits to himself as agent for the said Steinway piano in the sale thereof, to wit: at Detroit aforesaid; that in the year 1869, aforesaid, when the plaintiff herein ceased to act as the agent for the sale of the Knabe piano, as aforesaid, the said defendants became the agents for said Knabe piano, and ever since the said year 1869 the defendants have been,

and were at the time of committing of the grievances by
the said defendants as hereinafter set forth, the agents for
the sale of the said Knabe piano in the city of Detroit, in
the county and state aforesaid, and well knowing the
premises, but contriving and falsely and fraudulently intend-
ing to injure the said plaintiff in his said trade and busi-
ness as agent for the said Steinway piano, which is some-
times called the 'King,' and is also sometimes called the
'King of Pianos,' and to wrongfully cause it to be believed
that the said plaintiff regarded the Knabe piano, for which
the said plaintiff had been agent as aforesaid, and for which
the said defendants were then and are now the agents, as
superior to the Steinway piano aforesaid, for which the said
plaintiff was then and is now the agent, and thereby to
injure the said plaintiff in his said business, and to pro-
mote and increase the sale of the said Knabe piano, and
thereby increase the gains and profits of the defendants,
and to retard and decrease the sale of the Steinway piano
aforesaid, and thereby injure the plaintiff in his said trade
and business by diminishing the gains and profits of said
business, and to vex, harass, oppress and wholly ruin the
plaintiff in his said business, heretofore, to wit: on the
tenth day of March, 1873, at Detroit, in the county and
state aforesaid, wrongfully, maliciously and injuriously com-
posed and published, and caused to be composed and pub-
lished, in the *Detroit Free Press*, a daily newspaper which
has a large circulation in the city of Detroit aforesaid, and
throughout the state of Michigan, to wit: a circulation of
fifteen thousand copies daily, and which is printed and pub-
lished in the city of Detroit aforesaid, a certain false, mali-
cious and injurious libel of and concerning the said plain-
tiff in respect to his said business, in the false, malicious
and libelous words following:

"'Before we (meaning the defendants herein) had the
honor of representing this magnificent instrument (meaning
the Knabe piano), the former agent (meaning the plaintiff)

had an opportunity to test them (meaning them, the Knabe pianos,) with what he (meaning the plaintiff) calls the King of Pianos (meaning the Steinway piano), and in every case the Knabe (meaning the Knabe piano) was (referring to the time when the plaintiff was the agent for both the Steinway piano and the Knabe piano as aforesaid) chosen as the best, backed up by the judgment of the agent (meaning the plaintiff), in whose regard the Knabe (meaning the Knabe piano) stood pre-eminent, and he (meaning the plaintiff) advised his (meaning the said plaintiff's) customers to purchase the Knabe (meaning the Knabe piano) as being superior in every respect. We (meaning the defendants) cheerfully refer to the parties who were guided by this agent's (meaning the said plaintiff's) wisdom and purchased the Knabe (meaning the Knabe piano) in preference to the so called King (meaning the Steinway piano).

"'The Knabe (meaning the Knabe piano) has proven to be, after ten years' wear, magnificent in every respect, and superior to all other pianos, just as their agent (meaning the plaintiff) represented while agent for both pianos (meaning the Steinway piano and the Knabe piano). We (meaning the defendants) respectfully endorse the recommend given by the old agent (meaning the plaintiff) for the great excellence of the Knabe piano in the past, and we (meaning the defendants) are proud to say that to-day the Knabe piano stands without a rival.'

" By means of which said premises the said plaintiff hath been and is greatly injured in his said trade and business, and is suspected to have made the representations in regard to said Knabe piano falsely and maliciously set forth in said libelous publication, and has been greatly vexed and harassed and injured thereby in his said business, and has lost and been deprived of divers great gains and profits in his said business, which would have arisen and accrued to him had not the said defendants composed and published, and caused to be composed and published as aforesaid, the false, malicious and injurious libel afore-

28 MICH.—47.

said, and hath been and is otherwise much injured and damnified therein, to wit: at Detroit, in the county and state aforesaid." [Here follows a second count similar to the first, except that it alleges the publication of the same article in *The Detroit Tribune*.]

"To the damage of the said plaintiff of ten thousand dollars, and therefore he brings suit, etc."

The defendants interposed a demurrer to this declaration, assigning the following causes of demurrer:

"*First*—That the matter set out in each of the counts of said declaration and charge, and averred to have been made and published by the defendants, is not libelous, and is not actionable as charged in said declaration, or in either of the counts thereof.

"*Second*—That the said declaration nowhere avers that the Steinway piano was not inferior to the Knabe, nor does it allege that the defendants, by publishing that said plaintiff had recommended the Knabe piano as superior to the Steinway, published of and concerning the plaintiff that he had untruly or dishonestly recommended an inferior piano as superior to the one which was in fact the superior piano.

"*Third*—That the said declaration, and each of the counts thereof, claims and sets out damages greater than the plaintiff could suffer, and which could only be sued for by the manufacturer of the piano, and not by the agent of the manufacturer.

"*Fourth*—That the said declaration, in each of the counts thereof, alleges two distinct and separate libels in such manner as to constitute duplicity in pleading.

"*Fifth*—That the declaration does not aver that plaintiff was the only person who had been former agent for the Knabe pianos before the defendants became such.

"And also for that the said declaration is in other respects uncertain, informal and insufficient."

This demurrer was sustained, and judgment rendered for the defendants. The plaintiff brought error.

*John W. McGrath* and *C. I. Walker,* for plaintiff in error.

*D. B. & H. M. Duffield,* for defendants in error.

CHRISTIANCY, J.

This was an action brought by the plaintiff in error against the defendants in error in the Wayne circuit court, for a libel.

The defendants demurred. The court sustained the demurrer and rendered final judgment with costs against the plaintiff, which he brings to this court by writ of error.

The declaration is based upon the publication by the defendants, in *The Detroit Free Press* and *The Detroit Tribune,* of an article claimed to be false and libelous, and to have been injurious to the plaintiff in his trade or business, as an agent for the sale of Steinway pianos, so called.

As a copy of the declaration will accompany the report, it will be sufficient to refer to it here for the points raised by the demurrer.

The first ground of objection relied upon in support of the demurrer is, that the declaration does not show the application to the plaintiff of the language published and claimed to be libelous; in other words, that it does not show with sufficient certainty that it was published "of and concerning the plaintiff" with reference to his trade and business; that as the publication did not mention the plaintiff by name, but only refers to the agent for the sale of the Steinway pianos, who had also been previously agent for the sale of the Knabe pianos, the mere innuendo, "meaning the plaintiff," etc., whose office is to *explain* and not to *enlarge* the meaning of the precedent allegations, is not sufficient, and had no effect to show that the plaintiff was the person intended.

This objection would doubtless have been well founded, if the declaration had not contained matter of inducement showing with reasonable certainty that the plaintiff was such agent. But here the declaration does allege in the

usual form of such introductory allegations, that from the year 1866 to the year 1869, the plaintiff was the general agent for the state of Michigan, for the sale of both descriptions of pianos, and "had the sole and exclusive right of sale of both for the city of Detroit in said state;" that "in the year 1869 the plaintiff ceased to act as agent for the sale of the Knabe pianos, but continued to act as agent for the sale of the Steinway pianos, and has ever since continued to act as agent for its sale," and was so acting at the time of the publication; and that in 1869, when plaintiff ceased to act as agent for the sale of the Knabe pianos, the defendants became and ever since have been the agents for the sale of the latter. This was sufficient to lay the foundation for the allegation that the words were published of and concerning the plaintiff in respect to his said business, and to point the innuendo; and when the words of that innuendo, "meaning the said plaintiff, etc.," are understood, as they must be, as referring back to this matter of inducement, it is rendered sufficiently plain, both to the defendants and the court, that the defendants are charged with publishing the libel "of and concerning the plaintiff, in respect to the business mentioned;" and taking the inducement and the innuendo together, the latter is seen to result as the logical conclusion from the former. We do not see the force of the objection, that the declaration does not show that no other person had been a former agent for both pianos, or was then an agent for the Steinway pianos. Under the allegations in this declaration, no other person could be presumed to be such agent, without any allegation or proof to that effect. The rule of certainty applicable to a declaration was never so strict as to require it to negative every possible counter implication. The declaration in this respect was sufficient.

The next ground relied upon is that the publication was not libelous, as tending to injure him in his trade or business as the agent in making sales of the Steinway pianos; because, to maintain the action upon this ground, special

damages must be properly alleged, which it is insisted is not done in this declaration; as it is not alleged that plaintiff has lost his agency, by means of the publication, nor does it show whether he was employed upon a salary or for a commission.

But the declaration does allege that prior to the time of the publication he had been and was carrying on the business of the agency, "and had in the way of his aforesaid trade and business, as agent for the sale of the Steinway pianos, acquired great gains and profits, and was, up to that time, daily and honestly acquiring great gains and profits to himself, as such agent in the sale thereof." And it is further alleged that by means of the publication, the plaintiff has been and is greatly injured in his said trade and business, and has lost and been deprived of divers great gains and profits in his said business, which would, but for such publication, have arisen and accrued to him, etc. This language, "great gains and profits of the business of such agency accruing to him as such agent in making sale of pianos," etc., and the being deprived of such gains and profits, is clearly inapplicable to an agent employed upon a salary. The fair and only fair and natural import of the language is, that the agency was one in which he derived a part of the profits of, or a commission upon the sales. It is sufficiently clear and certain fairly to notify the defendants of the kind of injury or damage intended to be proved; and to entitle the plaintiff to judgment, if admitted by them.

But it is further said that in setting out the special damages, the plaintiff should have shown how he had suffered the damage, and the particular amount, and the particular sales the publication had prevented him from making. But the case is not like that of *Shipman v. Burrows*, upon which the defendants rely, where the plaintiff, a shipmaster, alleged generally that in consequence of the publication, etc., certain insurance companies refused to insure any vessel commanded by him, or any goods laden on board, etc.,

without setting forth any particular application to, or a refusal by any such company.

In that case, whether correctly decided or not, the plaintiff must have known, and could therefore easily have set forth the particular instance of refusal. But how could the plaintiff thus know and specify the particular instance here where parties simply omitted to call for the purchase of these pianos? Had he been in the habit of carrying them around to supply customers, perhaps the case might have been analogous to that of the shipmaster; but this does not appear. Nor is this like the loss of trade from such a cause in many other cases, where the same customers are in the habit of resorting to the same shop for dry goods or groceries frequently needed: pianos are not bought at frequent, but at very distant intervals by the same person. Almost every customer must, in the nature of things, be a new one. And yet when the injury complained of is a loss of trade, in ordinary cases, from slander or a libel, it seems to be settled upon authority, and we think upon sound principle, that the names of the customers driven away or lost need not be mentioned; but the general allegation of the loss of trade is sufficient, and the declaration may be supported by evidence of such general loss.—See *Evans v. Harries, 38 Eng. L. & Eq., 347; Hartley v. Herring, 8 T. R., 130; Ashley v. Harrison, 1 Esp., 48; Trenton, etc. Ins. Co. v. Perrine, 3 Zab., 402.*

But it is further insisted, that to maintain an action for such a publication, the words must impute some charge or matter in relation to the plaintiff's business, trade or vocation, which, if true, would render him unworthy of employment. For the purpose of this case it may be admitted that this would be true, if the loss of, or dismissal from employment as agent, was the special injury complained of —though we give no opinion upon such a case. Here this is not the injury complained of; the plaintiff has not ceased, but still continues to be employed as agent; and the gist of his complaint, the very substance of the alleged injury,

is that his income and profits from the business have been reduced by the false and malicious libel complained of. And within the very principle which allows an action to be maintained for a malicious slander or libel occasioning loss or injury to a man in his trade or business in any case, we think the defendants must be held liable for the injury alleged here.

The definition of a libel, as given by Mr. Townshend upon a review of the authorities is, that it is a wrong done by writing or effigy; and if false and malicious, certainly, and for the purpose of injuring another in reputation, trade, employment or property, every publication of language concerning a man or his affairs, which, as a necessary or natural and proximate consequence, occasions pecuniary loss to another, is *prima facie* a libel, if the publication be by writing.    See for the principle and instances in illustration, *Townshend on Slander, pp. 35, 45, 68 and 237 ; Starkie on Slander, pp. 2, 115, 129, and 139 to 144.* See also *Trenton Ins. Co. v. Perrine, 3 Zab., 402 ; Gates v. Bowker, 18 Vt., 23.*

But it is further urged by the counsel for the defendants that there is no allegation that the Knabe piano was not, in fact, the best.

Which, upon the whole, is in fact the best piano, might be a very difficult question to settle; one might doubtless be better in one particular feature, and the other in another,—each would naturally have its friends and its opponents.    Both the plaintiff and the defendants were at entire liberty to recommend that for which they were respectively the agents, as superior to the other; to point out all its advantages, as well as all the defects of the other, so long as they confined themselves to their own views, and such proofs as they were able to offer; and a reasonable latitude should, of course, be allowed for each to puff his own.    But this right must, in justice, be so far limited that neither should, for the purpose of adding to his own sales and diminishing those of the other, be allowed

to place the other in the false position of having recom-
mended that of his opponent as better than his own; both,
from the nature of their employment, being supposed to
be experts, and the majority of the community not so com-
petent to judge for themselves of the merits of each, and
naturally relying much upon their judgment.   Under such
circumstances neither could be justified, and it would be a
gross wrong to allow him, falsely, and for the purpose of
injuring  the other by diminishing his sales, to represent
the other. as himself recommending as the best that for
which the other was agent.   Nothing short of the truth
of such a representation could justify its publication.   It
has much the same effect as forging the name of the other
to a certificate of that import, and publishing it to the
world as genuine.

The plaintiff having been the exclusive agent for the
sale of both pianos up to 1869, and continuing the agent
for the sale of the Steinway, while the defendants became
and were the agents for the sale of the Knabe piano,
after he had given it up; the defendants publish in a
newspaper in the city where both are doing business, and
of wide circulation, the false statement and representation
that the plaintiff had, when agent for both, pronounced,
and after full opportunity to test both, declared the Knabe
piano in every case the best instrument, and advised his
customers to purchase it, as being superior in all respects.
The intention of this publication is too clear to be mis-
taken.   It was to place the plaintiff before the public and
before customers in a false, somewhat ridiculous and dis-
creditable attitude ; to take from his recommendations of
the Steinway piano which he was selling, all credit and
reliance, and thereby to diminish the sales of the Steinway,
in which he was engaged, and to promote the sales of the
Knabe, in which they were engaged.   This was clearly the
design and purpose of it; and this purpose could not be
effected without injuring the plaintiff in his business as
agent in making sales.   Such, therefore, was the natural

tendency, and so far as it should be believed, the direct and inevitable effect of the publication. It must, therefore, upon just principle, I think, be considered as libelous, and as actionable in itself, when false in fact and maliciously published for the purpose of thus injuring the plaintiff, as the demurrer admitted it to have been.

This is not like the ordinary cases of merely recommending one's own articles for sale as the best, and decrying, though falsely, the articles of another which may come in competition. Nor is it in principle like the report of a chemist upon the respective merits of the oil prepared and sold by the plaintiff, and that sold by the defendant, as in *Young v. Macrae, 3 Best & Smith, 264.* If in that case the publication had represented the plaintiff himself as being the chemist, and the report disparaging his oil as being his own, the cases would have been parallel. It would have presented, as the present case does, a species of wanton wrong and injury which might be very injurious to the plaintiff, and from which he could in no way protect or defend himself without suit.

I express no opinion upon the point, whether, had this been merely verbal slander, it would, or would not have been actionable without proof of special damage.

I know it has been said that the distinction maintained between the oral and written language, as regards its actionable quality where published concerning an individual, as such, is not recognized in regard to language concerning one in a special character; that in regard to language concerning one in a special character, it makes no difference in regard to its actionable quality, whether it be published orally or in writing.—*Holt on Libel, 218; Townshend on L. and S.,* § *180.* It may be true, as suggested, that "the language in writing which concerns one in a special character is usually actionable when published concerning the individual, as such, and without reference to his special character; and that the question, whether it is or is not actionable as affecting one in a special character, has arisen

28 MICH.—48.

almost exclusively in respect to oral language." But I cannot see that this is any sound reason, why *when* it *does arise in reference to written language*, and especially language printed in a newspaper of wide circulation, the same distinction between the actionable quality of the words, depending upon their being printed and scattered broadcast—and supposed to be more maturely considered by the writer, and more widely and permanently injurious, or merely spoken and heard by comparatively few, and reasonably supposed to be more carelessly and hastily uttered,—should not be recognized, and this for the same reasons as when the defamatory words affect the individual as such—unless courts are expected to be, or to become, legal machines, deciding all future cases upon the mere words and exact measurements of past cases, instead of jurists, looking to the principles involved.

The same principles which recognize the distinction in all other cases sustain it equally in this. And the author first quoted seems to admit this substantially, when he adds, after the statement of the distinction above stated, "though defamation when written may be actionable when the same words, if spoken, would not." And see *Harman v. Delaney, 2 Str., 898,* where it is said: "The law has always been very tender of the reputation of tradesmen; and therefore words spoken of them in the way of their trade, will bear an action, that will not be actionable in the case of another person; and if bare words are so, it will be stronger in the case of a public newspaper, which is so diffusive."

We think the court erred in sustaining the demurrer, and the judgment must be reversed, with costs.

The other Justices concurred.