MITCHELL, *et al.* v. BRADSTREET COMPANY, *Appellant.*

Division Two, May 24, 1893.

1. **Libel:** MERCANTILE AGENCY: FALSE PUBLICATION OF INSOLVENCY: PRIVILEGE. A false publication by a mercantile agency that a commercial firm has "assigned" is not privileged, where the publication, sheet is sent not only to the creditors of the firm but to all the subscribers of the agency, regardless of their location or interest in the firm's financial standing.

2. ———: ———: ———: ———. The foregoing is especially true where it appears that the agency was not asked by any of its patrons for information as to the firm's financial standing, and the publication was false in fact, and voluntary on the agency's part, and it was asked to retract the statement and refused to do so.

3. ———: SOLVENCY. Where a firm has ample available means with which to liquidate its indebtedness it is not insolvent.

4. ———: INSOLVENCY: WORDS ACTIONABLE, PER SE. A false publication that a business firm has "assigned," is actionable *per se* and malice will be implied from such publication itself.

5. ———: ———: ———: VERDICT. A verdict for plaintiffs in such case for $5,500 is not excessive, where they were doing a large and lucrative business and the publication compelled them to cease from the same and almost entirely destroyed their credit.

6. Practice: INSTRUCTIONS. The trial court is not reqeuired in civil cases to give instructions when none are asked by the parties.

*On Rehearing.*

7. Evidence: ANSWER: PRACTICE. The admission of evidence cannot be assigned for error by defendant, where such evidence merely supports the averments of the answer.

8. Supreme Court Practice: HARMLESS ERROR: STATUTE. The supreme court is expressly prohibited by statute (Revised Statutes, 1889, sec. 2308) from reversing a judgment, unless it shall believe error was committed by the trial court materially affecting the merits of the action.

9. Libel: COMMERCIAL AGENCY: PUBLICATION OF INSOLVENCY: DAMAGES. Where, in an action by merchants against a commercial agency for publishing that plaintiffs were insolvent, the petition charges that the "publication is a libel on their good name and credit and that by reason thereof they were forced to suspend business to their damage," proof of loss of trade as an element of damages is competent.

10. ———: ———: EVIDENCE: HARMLESS ERROR. The admission of evidence, in such case, of plaintiff's failure to collect accounts other than those set out in the petition on account of which special damages are claimed, was harmless error and will not justify a reversal of the judgment.

11. ———: ———: ———: DIRECTING A VERDICT. The publication being libelous *per se* as to all other persons than plaintiffs' creditors, and the publication being admitted in the answer, and the evidence showing that it was sent to others than plaintiffs' creditors, the court properly instructed the jury to find for the plaintiffs and that the only question before the jury was the amount of damages.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*Boyle & Adams* and *George R. Lockwood* for appellant.

(1) The "sheet" was a privileged communication to subscribers who were creditors of plaintiffs, and the court erred in allowing proof of publication to such subscribers. Odgers [2 Eng. Ed. 1887], p. 238; Newell on Defamation [Ed. 1890], p. 393; *Trussell v. Scarlett*, 18 F. R. 214; *Locke v. Bradstreet*, 22 F. R. 771; *Sunderlin v. Bradstreet*, 46 N. Y. 188; *King v. Patterson*, 49 N. J. L.417; *Pollasky v. Michener*, 9 L. R. A. (Mich.) 102. (2) It appeared from the petition and the admissions of plaintiff that the words published were true in the sense given them by the *colloquium*, that is that plaintiffs were insolvent, and therefore the instruction for a non-suit should have been given. *Eddy v. Baldwin*, 32 Mo. 369; *Schwabacher v. Kane*, 13 Mo. App. 132; Bouvier's Dictionary, Title—Insolvency; *Bank v. Walton*, 5 L. R. A. 765; *Cunningham v. Norton*, 125 U. S. 77; *Thompson v. Thompson*, 4 Cush. 127. (3) The words published being innocent without the allegation of explanatory facts, they were not libelous *per se.* *Baldwin v. Walser*, 41 Mo. App. 243; *Boyce v. Aubuchon*, 34 Mo. App. 315 (324); *Salvatelle v. Ghio*, 9 Mo. App. 155; *Legg v. Dunleavy*, 80 Mo. 558 (563); *Woodruff v. Bradstreet*, 5 L. R. A. 555; *Christal v. Craig*, 80 Mo. 367 (373); Townshend on S. & L., secs. 308, 336, 337; *Powell v. Crawford*, 107 Mo. 595. The words complained of not being actionable *per se* special damages must be alleged, and only such can be recovered, and they must have accrued at the commence-

ment of the suit. *Newbold v. Bradstreet*, 57 Md. 38 (53); *Cook v. Cook*, 100 Mass. 194; *Birch v. Benton*, 26 Mo. 155; Townshend on S. & L., secs. 146, 148, 345; Newell on Defamation, p. 849, 851-2, 868, 926. And where loss of trade is alleged the customers must be called to testify as to why they stopped trading with plaintiffs. *Newbold v. Bradstreet*, 57 Md. 38 (54); Townshend, p. 267, note. Evidence of loss of custom in 1890, was inadmissible as showing either general or special damages; inadmissible as general damages because too remote and not the necessary consequence of the publication complained of; and inadmissible as special damages because it did not accrue before the commencement of the action, because not pleaded, and because not the natural and proximate consequence of the words published. Townshend, secs. 146-148, 197-202, 345; Newell, pp. 849-852, 866, 926. (4) The damages awarded by the jury are grossly excessive and the jury must have been governed by passion or prejudice in fixing the sum assessed by their verdict. (5) The court erred in instructing the jury that they must find for plaintiffs. Const. of Mo. 1875, art. 2, sec. 14; *State v. Armstrong*, 106 Mo. 395; *Flint v. Hutchinson Smoke Burner Co.*, 16 L. R. A. (Mo.) 243; *Republican Pub. Co. v. Miner*, 12 Col. 77.

*Harvey & Hill* for respondents.

(1) The ruling of the trial court that the word assigned, as used in said publication, was not libelous *per se*, we strenuously insist was error, and that no *innuendo* was necessary. It is well established that a publication affecting one in his profession, business or trade if false, is libelous *per se*. 28 Am. Law Reg., 257; *Hermann v. Bradstreet*, 19 Mo. App. 227; *Hays v.*

*Ball*, 72 N. Y. 418; *Weiss v. Whittemore*, 28 Mich. 366; *White v. Nichols*, 3 How. U. S. 285; *Kimball v. Fenander*, 21 Wis. 334; *Locke v. Bradstreet*, 22 Fed. Rep. 771; *McGinnis v. Knapp*, 109 Mo. 137. (2) The word "assigned" when used in connection with a merchant's business, as in this case, was actionable *per se*. Townshend on Libel and Slander, sec. 133; *Elain v. Badger*, 23 Ill. 498; *Erber v. Dun*, 12 Fed. Rep. 526. (3) The publication being libelous *per se*, it was not necessary to prove special damages, nor was it necessary for respondents to allege same. *Trimble v. Anderson*, 79 Ala. 514; *Depew v. Robinson*, 95 Ind. 412; *Swift v. Diceman*, 31 Conn. 285; *Newbit v. Slotuck*, 35 Me. 215; *Hair v. Walker*, 2 Greene (Iowa), 440; *Montgomery v. Knox*, 23 Fla. 595. (4) While it is true that when the language is actionable *per se*, he need not allege or prove special damages, yet he may do so in aggravation of the damages. Odger L. & S. 306; *Hicks v. Walker*, 2 Greene (Iowa), 440. (5) Where a publication is made of one's profession or trade and is libelous *per se*, it is competent for plaintiff to prove on account thereof, a general diminution of his business and trade, and he is not required either to aver in his pleadings, nor point out or designate in his proof, the customers who have ceased to deal with him. *Bergman v. Jones*, 94 N. Y. 51; *Evans v. Harries*, 26 L. J. Ex. 52; *Broad v. Duester*, 8 Biss. (U. S.) 265; *Trust Co. v. Perrine*, 23 N. J. L. 402; 57 Am. Dec. 400; *Weiss v. Whittemore*, 28 Mich. 366.

BURGESS, J.—Action for libel. On the twenty-fifth day of November 1889, and prior thereto, the plaintiffs were partners, engaged in the mercantile business in the town of Sugar Loaf, Cleburne county, Arkansas, under the firm name and style of Mitchell, Smith & Co. The plaintiffs kept a general store; their

stock consisting of such goods as are usually carried by country merchants. While thus engaged the defendant, duly organized and doing business in St. Louis, Missouri, and conducting a mercantile agency, under the name of the "Bradstreet Company" on the date aforesaid, published of and concerning the plaintiffs, the following language and accusation, to-wit: "Mitchell, Smith & Co., of Sugar Loaf, Arkansas, G. S., assigned."

The petition alleges that the publication was false, and claims special damages for injuries sustained to their credit in various ways and with different ones of their patrons and customers.

The material part of the answer of defendant is as follows: "And further answering said amended petition, defendant says: That it is a corporation organized for and engaged in the business of conducting a mercantile agency, and has been engaged in said business for many years, and is now and was on November 22, 1889, and had been for many years prior to said date, employed by a large number of merchants and manufacturers throughout the United States as their representative and agent to collect, procure and preserve for them, said patrons or employers, reports and information as to the estate, property, credit, conduct, character and trustworthiness of persons and corporations engaged in trade or commerce in the United States and elsewhere, so that defendant's said employers, who are commonly known as subscribers to defendants' agency, may have the knowledge and information necessary to enable them to safely and properly conduct business with strangers or distant customers, and it is expressly agreed between defendant and its said employers that all information, whether written, printed or verbal, furnished by defendant, its agents or servants, shall be held in strict confidence, and used

exclusively for the benefit of such subscriber; and for the sole purpose of giving its said employers or subscribers, in strict confidence, and for their exclusive use and benefit as aforesaid, reports and information as to merchants and corporations engaged in mercantile pursuits in various parts of the country defendant issues from time to time in the city of St. Louis and elsewhere, to its said employers, small sheets containing such reports and information concerning merchants and manufacturers in various portions of the country, as defendant believes to be true and of value or importance to its aforesaid subscribers; and if defendant published of and concerning plaintiffs the words complained of in plaintiff's petition, defendant had good reason to believe, and did believe at the time of alleged publication, that the same were true; and defendant further says that at the time of alleged publication plaintiffs were unknown to the agents and servants of defendants, and that said publication if made, was made innocently, without malice, in the usual course of business, and to defendant's said subscribers or employers only, in strict confidence, and for the exclusive use of said subscribers, and in the belief that plaintiffs were customers of defendant's subscribers, or of some of them, and defendant says that said subscribers, or some of them, were creditors of plaintiffs or otherwise directly interested in the estate, property, credit, conduct and character of plaintiffs.''

The proof tends to show that plaintiffs were the only firm at the date aforesaid doing business in Sugar Loaf under the said name of ''Mitchell, Smith & Co.'' That at the time of said publication they were doing a large credit business with farmers, and were dependent upon their good standing and credit among merchants at St. Louis and elsewhere as a means of conducting and carrying on their said business. That at

the time of said publication, owing to the partial failure of the cotton crops in their section of the country, they were unable to collect, in full, debts due to them, and were dependent upon their credit and standing among their creditors as a means of successfully prosecuting their said business. They were somewhat indebted at the time of the publication to parties in the city of St. Louis, but their assets were ample to meet and pay all of their liabilities, had their credit and standing among their said creditors been unimpaired by the publication aforesaid. Up to the time of said publication the creditors of the respondents were resting satisfied, and the business of respondents was being pursued in a safe and comparatively prosperous manner.

The proof also shows that the publication complained of was through the medium of what is known as *Bradstreet's Sheet*, [a daily paper published by defendant in the city of St. Louis, and circulated among the merchants of said city and surrounding states.

It is also shown, that the defendant was notified, in a day or two after such publication, that the same was false, but it declined, or failed in the subsequent issue of its said sheet to retract or apologize, or make any explanation of said publication. The proof shows that plaintiffs, prior to said publication, had good credit in the city of St. Louis, that is credit to an extent commensurate with all their necessities; but on the coming out of said publication, their creditors became restless, some of them placing their claims in the hands of attorneys, some writing urgent letters, and one stopping goods in transit, while others in St. Louis became exceedingly apprehensive, and by their repeated inquiries at the office of Hill, Fontaine & Co., plaintiffs' principal creditor, compelled the latter to

take urgent steps upon their claim, resulting in plain-
tiffs' sale of their property at a sacrifice, the suspension
of their business, and injury of their credit.

At the close of plaintiffs' evidence defendant asked
the following instructions:

"The court instructs the jury that, under the plead-
ings and evidence, plaintiffs are not entitled to recover
in this action, and you will therefore find for defend-
ant."

The court refused to give this instruction, to which
refusal defendant duly excepted.

At the close of the whole case defendant asked the
following six instructions, to-wit:

"1.   The court instructs the jury that there is no
evidence in this case showing that defendant published
of plaintiffs the words complained of with malice in fact,
that is through hatred, ill will, or a desire to injure
plaintiffs as merchants or individuals.

"2.   The court instructs the jury, that defendant
had the right to report to such of its customers as were
creditors of the plaintiffs any information touching
plaintiffs' financial condition which it received in the
usual course of business and believed to be true, and
that defendant is not liable to plaintiffs for any damage
that may have been caused them through such report
so made.

"3.   The court instructs the jury that, if they believe
from the evidence that defendant, on or about Novem-
ber 23, 1889, published of plaintiffs the words com-
plained of, and at that time plaintiffs were insolvent,
that is, could not pay out of their assets their debts as
they matured in the ordinary course of business, then
they will find for defendant.

"4.   The court instructs the jury that, if they
believe from the evidence that the damages claimed by
plaintiffs were not caused by reason of the publication

by defendant of the words complained of, but were brought about by the circulation by others of reports injurious to the financial condition or responsibility of plaintiffs, or because plaintiffs were insolvent, that is, unable to pay out of their assets their obligations as they matured in the usual course of business, they will find for defendant.

"5. The court instructs the jury that, if they believe from the evidence that plaintiffs by compromising their debts, or some of them, saved more money than they lost through their suspension of business, they will find for defendant.

"6. The court instructs the jury that, although they may find for plaintiffs, yet if they believe from the evidence that plaintiffs by compromising their debts, or some of them, saved more money than they lost through their suspension of business, then they will find for plaintiffs, nominal damages."

All of which instructions the court refused to give, to which refusal the defendant then and there at the time duly excepted.

The court then, of its own motion, gave the following instruction:

"The court instructs the jury as follows, viz: Under the evidence adduced, your verdict must be for the plaintiffs; the only questions left for your decision, therefore, are those relating to the amount of damages to be assessed.

"Damages are three kinds, viz: Nominal, compensatory and punitive. Nominal damages are given when there has been no material injury shown by the evidence to have resulted to the plaintiff from the act of the defendant complained of and when punitive damages are not to be awarded. Compensatory damages are given when the evidence satisfies the jury that the plaintiffs have sustained material or substantial injury,

and that that injury was the result of the wrongful act of the defendant complained of. Compensatory damages should be a sum necessary and sufficient to compensate the plaintiffs for such injury.

"Punitive damages are awarded in a proper case in addition to nominal and compensatory damages, for the purpose of punishing the defendant for the wrongful act, and setting an example before the community. Punitive damages are never allowed unless the evidence is sufficient to satisfy the jury that in the doing of the wrongful act complained of, the defendant was actuated by feelings of ill will or hatred towards the plaintiffs, or reckless disregard of the consequence of the act.

"There is no evidence in this case that would justify you in the infliction of punitive damages. Your inquiry, therefore, is limited to the question as to whether or not the plaintiffs sustained material or substantial injury, and if that injury was caused by the publication in question, and if yea, then how much money will be necessary and sufficient to compensate the plaintiffs for that injury; and that should be your reward or damages.

"If you are not satisfied from the evidence that the plaintiffs have sustained material or substantial injury, and that that injury was caused by the publication in question, then you should assess nominal damages only."

To the giving of said instructions the defendant then and there at the time duly excepted. Under the instruction of the court the jury found a verdict for plaintiffs for the sum of $5,500, from which verdict and judgment thereon defendant prosecutes this appeal.

I.  Defendants' first contention is that the publication sheet was privileged, in the absence of motives, as to subscribers who were creditors of plaintiffs, and that the court erred in allowing the proof of publication to such

subscribers. If the proof showed that no other persons than the creditors of plaintiffs had received the publication sheet in which the libelous matter is shown to have been published, there are authorities which hold that in the absence of malice in the publication, owing to the confidential relations existing between such creditors and the defendant, the publication was privileged, and defendant was not liable in damages therefor, although the same was false.

In the case of *Trussell v. Scarlett*, 18 Fed. Rep. 214, it was held that "when a mercantile agency makes a communication to one of its subscribers who has an interest in knowing it, concerning the financial condition of another person, and when such communication is made in good faith, and under circumstances of reasonable caution as to its being confidential, it is a protected, privileged communication, and an action for libel cannot be founded upon it, even though the information given thereby was not true in fact, and though the words themselves are libelous." See, also, *Locke v. Bradstreet Co.*, 22 Fed. Rep. 771.

But the answer in the case at bar admits, and the proof shows that the publication sheet under consideration was not only sent to the *creditors* of plaintiff, but was sent to all of the subscribers of defendant, regardless of their location or interest in the financial standing of plaintiffs. While it may be conceded that the business of defendant is a laudable one, and, in so far as it concerns the tradesmen, bankers, manufacturers and business of the country, almost indispensable, it cannot be that a company for hire, a moneyed consideration paid to them, can make a false statement or publication as to the financial standing of any person or persons or business firm, send it all over the country, to persons who are not the creditors of any such person or firm, as well as to those who are, and ruin them in their credit and

business, and then claim immunity from liability therefor upon the ground that such publication was privilleged. We are not inclined to give our sanction to a doctrine which .seems to us to be so harsh, and so unjust, and in this position we are sustained by courts of high authority.

In the case of *Pollasky v. Minchener*, 9 Lawyer's Reports Annonated 102, which was a suit against the agent of a commercial agency for libel, the supreme court of Michigan says: "The notification sheet containing the false statement respecting the acts of Pollasky Bros. was not alone sent to those who were dealing with them and extending them credit, but to between six and seven hundred subscribers in Michigan, and others residing out of the state, from some of whom they might wish to purchase goods upon credit, and this without any request being made to be informed of the standing or credit of the Pollasky Bros., and others of whom, and by far the greater number, were engaged in different lines of business, and who were in no manner interested in knowing their standing, or financial ability or business integrity: To all such the communication was not privileged. It cannot be said that a blacksmith, a saw-miller and a lumber dealer, a furniture manufacturer, a dealer in hardware, a chemist, mineral water bottlers, butchers, book agents, physicians or druggists, or other business men mentioned in the notification sheets, who are not engaged in wholesale or retail dealing in dry goods, clothing or boots or shoes, are at all interested in the business standing of a dealer in dry goods, clothing and boots and shoes. No court has gone so far as to hold all communications made by a mercantile agency to their subscribers, if made in good faith, but made generally, without request, or to those inquiring concerning or interested in knowing the condition and financial stand-

ing of a person, are privileged. On the contrary, courts have uniformly held that privilege does not extend to false publications made to patrons who have no such interest in the subject-matter. *Goldstein v. Foss*, 2 Car. & P. 252; *Com. v. Stacey*, 8 Phila. 617; *Taylor v. Church*, 8 N. Y. 452; *Ormsby v. Douglass*, 37 N. Y. 477; *Sunderlin v. Bradstreet*, 46 N. Y. 188; *King v. Patterson*, 49 N. J. L. 417; *Bradstreet Co. v. Gill*, 2 L. R. A. 405; s. c., 72 Texas, 115; *Johnson v. Bradstreet Co.*, 77 Ga. 172; *Erber v. Dun*, 12 Fed. Rep. 526.''

"The law guards most carefully the credit of all merchants and traders. Any imputation on their solvency, any suggestion that they are in any pecuniary difficulties, is, therefore, actionable without proof of special damages * * * of merchants, tradesmen and others in occupations where credit is essential to the successful prosecution, any language is actionable without proof of special damages which imputes a want of credit or responsibility or insolvency." Newell on Defamation, Slander and Libel, secs. 34 and 35, pages 192 and 193.

In the case in hand, the defendant was not even applied to by any of its patrons for information in regard to the financial standing of the plaintiffs, and the publication of the statement that plaintiffs had assigned was merely voluntary on their part, false in fact, and compelled them to retire from business. When asked to retract the statement they declined to do so. Under such circumstances the statement was in no wise privileged. The information acquired by defendant was its own, and was communicated to others or made public in such form and upon such terms as it dictated.

Neither the welfare or convenience of society will be promoted by a publication of matters, false in fact,

injuriously affecting the standing and credit of merchants and tradesmen, broadcast through the land, within the protection of privileged communications. While the defendant's business is lawful, yet in its conduct and management it must be subjected to the ordinary rules of law and its proprietors and managers held to the liability which the law attaches to the like liability of others.

2. The next contention of defendant is that the publication was true, that plaintiffs were in fact insolvent at the time thereof, and that the court for that reason should have given the instruction in the nature of a demurrer to the evidence. A firm is understood to be insolvent when unable to pay their debts as they fall due in the usual course of trade or business. Bouvier's Dictionary, Insolvency, 809. It "implies as well the present ability of the debtor to pay out of his estate all his debts, as also such attitude of his property as that it may be reached and subjected by process of law, without his consent, to the payment of such debts." *Eddy v. Baldwin,* 32 Mo. 369; *Thompson v. Thompson,* 4 Cush. 127; *Bank v. Walton,* 5 L. R. A. 765.

We do not think that this contention is borne out by the evidence, as according to the statement of Mitchell, one of the plaintiffs, who testified in the case, and who knew all about the business of the firm and its assets, it had ample available means with which to have liquidated its indebtedness.

3. It is next contended that the publication was not libelous *per se,* and that therefore it was necessary for plaintiffs to allege in their petition, and also prove special damages, before being entitled to recover. The authorities cited by defendant do not sustain this contention. If the libel complained of is not actionable

*per se* then defendant's position is correct, otherwise not.

In the case of *Weiss v. Whittemore,* 28 Mich. 366, the supreme court of that state say: "The definition of a libel, as given by Mr. Townshend upon a review of the authorities is, that it is a wrong done by writing or effigy; and if false and malicious, certainly, and for the purpose of injuring another in reputation, trade, employment or property, every publication of language concerning a man or his affairs, which, as a necessary or natural and proximate consequence, occasions pecuniary loss to another, is *prima facie* a libel, if the publication be by writing."

A definition of libel, as quoted and approved by this court in *Nelson v. Musgrave,* 10 Mo. 648, is: "A malicious publication, expressed either in printing or writing, or by signs or pictures, tending either to blacken the memory of the dead, or the reputation of one who is alive, and expose him to public hatred, contempt or ridicule." This definition has been cited with approval in *Price v. Whitely,* 50 Mo. 439; and *Legg v. Dunleavy,* 80 Mo. 563. "Any printed publication that tends to bring a man into disrepute, ridicule or contempt is a libel in a legal sense."

In the case of *Hermann v. Bradstreet Company,* 19 Mo. App. 227, it was held that the following words: "Joseph Hermann, brickmaker, is in the hands of the sheriff," which were published of and concerning Hermann who was engaged in the business of brick making, were libelous and actionable *per se.* Words written or spoken of one's trade are actionable when they might not be so, if spoken of the individual simply. Townshend on Slander and Libel, sections 132–179.

Every willful and unauthorized publication, written or printed, which imputes to a merchant or

other business man conduct which is injurious to his character and standing as a merchant or business man, is a libel and implies malice. *Locke v. Bradstreet* Co., 22 Fed. Rep. *supra*.

So it was held in the case of *Newell v. How*, 22 Minn. 235, that in those trades or professions in which, ordinarily, credit is essential to their successful prosecution, as, for example, that of merchant, language is actionable *per se* which imputes to one in such trade or profession a want of credit or responsibility, or insolvency, past, present or future. Such language necessarily or naturally and presumptively, causes pecuniary loss to the person of whom it is published.'' See also *McGinnis v. Knapp*, 109 Mo. 137.

These authorities abundantly show that the publication here complained of, to-wit: ''Mitchell and Company, assigned,'' was actionable *per se*, and that from the publication, the same being false, malice is implied; and that the court did not commit error in instructing the jury to find for plaintiffs.

4. It is also contended that the damages assessed by the jury are excessive, so much so that the jury must have been governed by passion or prejudice in arriving at their verdict. There does not seem to be anything in the case to justify this position, when all the facts connected with the publication and the result thereof are taken into consideration. The plaintiffs seem to have been doing a large and lucrative business, principally upon credit, and the act of defendant compelled them to retire therefrom and in fact almost entirely destroyed their credit. The verdict, in our opinion, was not more than they were entitled to recover under the evidence and instruction of the court.

5. The final contention on the part of defendant is, that under art. 2, sec. 14, Constitution of Missouri,

which provides, "That no law shall be passed impairing the freedom of speech; that every person shall be free to say, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and that in all suits and prosecutions for libel, the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact;" that it was the duty of the court to have instructed the jury that they were the judges of the law as well as of the fact, and that because of the failure to do so, that the instruction given in the case was erroneous. No instruction of this character or presenting this phase of the case to the jury was asked by defendant.

Section 2188, Revised Statutes, 1889, provides that when the evidence is concluded, and before the case is argued or submitted to the jury or to the court sitting as a jury, either party may move the court to give instructions on any point of law arising in the cause, which shall be given or refused. And that the court may of its own motion give like instructions, etc. Defendant cannot now be heard to complain of the refusal of the court to give an instruction which was not asked. It is not made the duty of the trial court by statute in civil, as it is in criminal cases, to instruct the jury whether it is asked to do so or not. Besides, no such question is made in the motion for new trial.

Being unable to discover any prejudicial error in the trial of the cause, either in the admission or exclusion of evidence, or the refusing or giving instructions, and the judgment being for the right party it is affirmed. All concur.

### ON MOTION FOR REHEARING.

BURGESS, J.—It is urged by defendant in its motion for rehearing that several questions of importance, and upon which the result of the case depends in this court were overlooked.

The first is that this court did not pass upon the action of the trial court in overruling the objections of defendant to the testimony of Messrs. Martin, Wear and Hill, witnesses for plaintiffs, who were subscribers of defendant, and creditors of plaintiffs for the reason that the sheet as to them was privileged. Defendant admits that the publication was made in the usual course of business, but to its subscribers and employers only. The testimony of these witnesses was admissible for the purpose of showing the publication of the sheet, as their statements with reference thereto were simply affirmative of the allegations in the answer. Their statements in regard to other matters privileged were not of sufficient importance to justify a reversal on that ground. Nor would the action of the court in allowing proof of the stoppage of goods by a merchant not shown to have been a subscriber of defendant, nor to have seen its sheets, justify a reversal of the case for that reason.

This court is expressly prohibited by section 2303, Revised Statutes, 1889, from reversing the judgment of a trial court, unless it should believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action. There was no such error in the court's ruling on the admission of the evidence in reference to this matter.

Defendant's next contention is that we failed to decide whether evidence of loss of custom in 1890 was inadmissible as showing either general or special dam-

ages; inadmissible as general damages, as defendant claims, because too remote and not the necessary consequence of publication complained of, and inadmissible as special damages, because it did not accrue before the commencement of the action, because not pleadel, and because not the natural and proximate consequence of the words published.

As to the remoteness of the damage, this precise question was passed upon by the court of appeals of New York on a trial of an action for libel, where the alleged libelous publication contained charges injurious to plaintiff's character and to his business, and the complaint averred that by reason of the libel plaintiff had been greatly injured in his business by the loss of good will and patronage. Plaintiff was permitted to testify as a witness that immediately after the publication his business fell off, and to state the amount of his daily sales up to and immediately after such publication, and it was held not to be error. *Bergmann v. Jones*, 94 N. Y. 51.

So when words actionable *per se* are spoken of an inn-keeper in the way of his trade, evidence may be given of a general loss of custom and decline in his business. *Evans v. Harries*, 1 H. & N. 251.

It was also held in the case of *Ashley v. Harrison*, 1 Esp. 48, that to prove the loss of profits sustained by plaintiff, from the absence of a lady who was engaged to sing at a musical entertainment, a witness who was the box-keeper was called, and he was asked if, in consequence of her declination to sing, several persons had not given up their boxes? The question was objected to and it was ruled that the witness might be asked generally, "whether the receipts of the house had not diminished from the time she declined to sing," it being stated in the declaration that in consequence of the libel and the lady's refusal to sing, the plaintiff has

lost the profits of several performances. And so it was held in the case of *Broad v. Duester*, 8 Bissell, 265, that when a publication is libelous *per se*, special damage to the business may be shown, though the words were not published concerning that business; and it is not necessary to allege the names of the customers who had ceased to do business with the plaintiff in consequence of the publication.

So it was held in the case of *Weiss v. Whittemore*, 28 Mich. 366, that the general allegation of the loss of trade is sufficient in ordinary cases of libel without setting out the names of the customers driven away or lost; and it may.be supported by evidence of such general loss.

In the case of *Evans v. Harries*, 38 Eng. L. & Eq. 347, in an action of slander, it was held that words spoken of the plaintiff in his business with a general allegation of loss of business, it is competent for the plaintiff to prove, and the jury to assess damages for a general loss or decrease of trade, although the declaration alleges the loss of particular customers as special damages, which is not proved.

So in the case of *Harrison v. Pearce*, 1 Foster & Finlason, 567, it is held that the jury might give the plaintiff in the case such damages as they thought had arisen from the decline of circulation, and *subsequent to the action* and this as general damages. The general allegation in the petition in the case in hand is, that the "publication is a libel on plaintiff's good name and credit, and that by reason thereof, they were forced to suspend their business to their damage in the sum of $15,000." The damages claimed and the proof to show loss of trade, was such damages as flowed directly from and the necessary result of the publication and such proof was permissible as general damages under the allegations in the petition. 2 Greenleaf on Evidence [15 Ed.] section 420.

Mitchell v. Bradstreet Co.

The mere fact that the trial court permitted the plaintiff over defendant's objections to introduce proof of their failure to collect accounts other than those set forth in the petition, on account of which special damages are claimed, would not justify this court in reversing the case, as no substantial injury could have possibly resulted to the defendant therefrom. Special damages when claimed in an action for libel must be alleged and proved as in any other case where such damages are claimed.

Another reason insisted upon why a rehearing should be granted is because the decision of the court as to the instruction given by the trial court is in conflict with the decisions of this court in the cases of *Sullivan v. Railroad*, 88 Mo. 169; *Bank v. Murdock*, 62 Mo. 70; *Whalen v. Railroad*, 60 Mo. 323; *Karle v. Railroad*, 55 Mo. 476; and *McKeon v. Railroad*, 43 Mo. 405. The rule laid down in those cases is, that the instructions taken as a whole should present the entire case, and that an instruction is erroneous which singles out certain facts and directs a verdict, if they are found, regardless of other facts at issue.

The publication being libelous *per se* as to all other persons than creditors of plaintiffs, and its publication being admitted by defendant in its answer, and the proof showing that the sheet was sent to others than creditors, the court could not have done otherwise than to have instructed the jury, as it did, that they were bound to find for plaintiffs, the only question for their consideration being the amount of damages that plaintiffs were entitled to recover under the evidence and instruction. The instruction is not obnoxious to the objection urged against it. On the contrary it presented the case fairly to the jury.

The motion is overruled. All concur.