**CREDIT BUREAU OF PULASKI COUNTY, INC., Appellant,**

v.

**Joseph LaVOIE; Dearl Whitaker, Individually and as Mayor of the City of Somerset, Kentucky; the City of Somerset, Kentucky; and First and Farmers National Bank, Appellees.**

Court of Appeals of Kentucky.

Jan. 29, 1982.

**50**

R. Dean Stewart, Paul Henderson, John D. Rogers, Somerset, for appellant.

James M. Frazer, John Paul Jones, II, Monticello, for appellee, Joseph LaVoie.

Benny Ham, John T. Mandt, Charles Adams, Somerset, for appellees.

Before GUDGEL, GANT and LESTER, JJ.

LESTER, Judge.

This is an appeal from a judgment entered upon a jury verdict determining that the appellant and the City of Somerset had invaded the privacy of appellee, Joseph LaVoie and assessing $5,000 damages against each of those defendants below. The cause of action against First and Farmers National Bank had been severed and subsequent to the entry of judgment, the city and its mayor satisfied the award against them.

Dearl Whitaker, as mayor of Somerset, was an advocate of an annexation proposal while Joseph LaVoie was diametrically opposed thereto. On February 1, 1978, the mayor attended a meeting of the Pulaski Fiscal Court as did LaVoie. Whitaker's business before the county governmental body had nothing to do with annexation and after he concluded his presentation to the court and was about to leave the meeting, LaVoie started berating him over his position upon the annexation, a subject not discussed by the magistrates. Thereafter, the mayor began to wonder who had addressed him and he requested Captain Vertrees Jones of the Somerset Police Department to "check out" the protestant. In order to accomplish the task, the officer examined the public records at the county courthouse as well as making inquiries at the Pulaski County Credit Bureau. From this agency, Jones obtained data concerning LaVoie's checking and savings accounts as well as the fact that other requests for information had been made of appellant with reference to LaVoie. Captain Jones also secured a previous address of appellee's in Minneapolis, Minnesota, and armed with this knowledge, he used the city's computer terminal in an effort to determine if there were any outstanding warrants for LaVoie or if he had a record. After Jones had accumulated all of the information, he typed it and gave the original to Whitaker while he retained the one copy.

One Rick Bryant, a reporter for the Commonwealth—Journal, who was privileged to examine certain reports maintained by the city police department, observed a copy of the computer transmission concerning LaVoie. Subsequent to his observation and inquiries, the police terminated Bryant's access to the records so he wrote and published an article which stated that the police had checked out a "Mr. X", an annexation foe, by use of the computer and examination of local financial data and public rec-

ords. The story did not identify appellee by name, recited that he had no record and did not reveal the amount of money he had on deposit with a local financial institution.

On March 8, 1978, LaVoie brought an action against Whitaker, both as an individual and as mayor, the City of Somerset and the bank, asking $100,000 actual and a like amount as punitive damages from each of the defendants. The cause of action was based upon breach of contract as to the bank and invasion of the right of privacy, a tort first recognized in this jurisdiction in *Brents v. Morgan*, 221 Ky. 765, 299 S.W. 967 (1927), as against the mayor and the city. At this juncture, appellant was not a party to the action.

By virtue of the fourth count of an amended complaint, LaVoie alleged that the credit bureau had violated reporting procedures as mandated by 15 U.S.C. § 1681 et seq. (Fair Credit Reporting Act) in that it "willfully and/or negligently failed to comply" with 15 U.S.C. § 1681e by not requiring certification from Captain Jones of the purpose for which he intended to use the information he was requesting from the agency, said purposes being limited by 15 U.S.C. § 1681b.

15 U.S.C. § 1681e provides:

(a) Every consumer reporting agency shall maintain reasonable procedures to avoid violations of section 1671c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

(b) Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681n permits recovery of actual as well as punitive damages for a *willful* failure to "comply with any requirement imposed" by the Act while 15 U.S.C. § 1681 o allows only actual damages for a *negligent* failure to comply. 15 U.S.C. § 1681b sets forth the lawful purposes for which the information may be used and it will suffice to say that no such legitimate purpose is involved in this litigation.

Even though the courts of the several states have jurisdiction to entertain actions brought under the provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681p and *Ruth v. Westinghouse Credit Co.*, 373 F.Supp. 468 (D.C.Okl.1974), the remedies provided are of a federal statutory nature so that the question of the right to relief in the form of actual or punitive damages is not to be determined by state law. *Ackerley v. Credit Bureau of Sheridan, Inc.*, 385 F.Supp. 658 (D.C.Wyo.1974). In other words, in the case at bar the Pulaski Circuit Court was a proper forum but it had to apply the federal law to an action based upon a federal statute and not the common law of Kentucky as applied to the tortious act of invasion of privacy (for that matter no common law allegation was made against appellant).

In this appeal, the Credit Bureau complains that the court failed to give certain instructions which, if given, would have had application only to the common law tort, an act with which it was not charged. On the other hand, all parties generally objected to the instruction given which was:

Every person, including the plaintiff, Joseph Lavoie, is privileged to the right to be secure from entrusion (sic) by others into his exclusively private life and personal affairs; This includes unwarranted publicity; governmental interference in

intimate personal activities; freedom to make fundamental choices involving himself, family, and relations with others. If you believe, from the evidence, that the defendant, the Credit Bureau of Pulaski County, Inc., violated this right and privilege, you will find for the plaintiff and against the defendant, Credit Bureau of Pulaski County, Kentucky.

If you believe, from the evidence, that the defendant, the City of Somerset, Kentucky, violated this right and privileges, you will find for the plaintiff against the defendant, the City of Somerset, Kentucky.

You are instructed that obtaining information from public records does not violate this privilege.

If you find for the plaintiff under Instruction One, answer the following interrogatory:

A. How much money do you find from the evidence you have heard in this case will fairly, reasonably and adequately compensate the plaintiff for any mental anguish or suffering, embarrassment or humiliation he suffered as a result of the defendant having violated the privilege of privacy referred to in Instruction One?

$10,000

B. How much of this award or amount do you find should be paid by the City of Somerset, if any?

$5,000

C. How much of this award or amount do you find should be paid by the Credit Bureau of Pulaski County, if any?

$5,000

It is at once discernible that there was no issue directed to the jury as to whether the appellant required the necessary certification and if it did and if one was made did it set forth the purpose(s) for which the information was to be used. See 15 U.S.C. § 1681e, 1681b. Moreover, if the credit bureau failed to obtain the certifications, did it do so willfully or negligently which would in turn determine the type of damages awarded, if any. 15 U.S.C. §§ 1681n, 1681o. As was pointed out by Judge Ross speaking for the Court of Appeals for the Eighth Circuit in *Thornton v. Equifax, Inc.,* 619 F.2d 700 (8th Cir. 1980), in a Fair Credit Reporting Act case local laws apply only to matters of practice and procedure while substantive rights created by the Act are controlled by federal law and not subject to fifty different rules of interpretation. This substantive law, of course, encompasses instructions and jurors deliberating upon action brought under FCRA should receive clear and concise directions that point their attention to the pertinent requirements of section 1681e and the willful and/or negligence provisions so as to properly determine the appropriate damages.

Appellant's reply brief takes the position that the case was not submitted to the jury under the FCRA but rather solely under an invasion of privacy theory, and in this premise it is correct. However, such a submission was also error for the complaint against the credit bureau was made under the Act and under the Act *only.* Therefore, as to the appellant this cause must be returned to the trial court for a new trial under the cause of action alleged, namely, a violation of the provisions of the Fair Credit Reporting Act.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.