David McDOWELL, et al., Appellants,

v.

**CREDIT BUREAUS OF SOUTHEAST MISSOURI, INC., a corporation, Respondent.**

No. 69559.

Supreme Court of Missouri, En Banc.

March 15, 1988.

Rehearing Denied April 19, 1988.

Kenneth Waldron, Scott E. Walter, Jackson, for appellants.

David M. Remley, Cape Girardeau, for respondent.

Robert B. Hoemeke, Joseph E. Martineau, St. Louis, for amicus curiae Pulitzer Pub. Co. and Dun & Bradstreet Inc.

James C. Swearengen, Mark W. Comley, Barry V. Cundiff, Jefferson City, for amicus curiae Mo. Bankers Assoc., et al.

WELLIVER, Judge.

Appellants appeal from a judgment entered upon a jury verdict by the Circuit Court of Cape Girardeau County in favor of respondent upon a petition which alleged that a credit report issued by respondent contained a false statement that the appellants had filed for bankruptcy.

The Court of Appeals, Eastern District, reversed the judgment but because of the importance of the issues and for the purpose of reexamining existing law and the MAI 3d instructions, transferred the cause to the Supreme Court pursuant to Mo.

Const. art. V, § 10. Our review is the same as if on original appeal.

## I

Appellants claimed that a credit report prepared and issued by respondent credit reporting agency to a customer was libelous because it falsely reported that appellants had filed for bankruptcy. Respondent issued the credit report to a financial institution for purposes of determining if appellants, who operated a home construction business, could convey good title to a house. Appellants offered the following jury instructions relating to the credit report.

### INSTRUCTION NO. B

Your verdict must be for plaintiffs if you believe:

First, defendant published a credit report containing the statement that plaintiffs had jointly filed bankruptcy, and

Second, such statement tended to deprive the plaintiffs of the benefit of public confidence and social assocations, and

Third, such statement was read by Ken Hayden and also read and heard by other creditors, suppliers, business associates and acquaintances of plaintiffs', and

Fourth, plaintiffs' reputation was thereby damaged.

Patterned after MAI 23.06(1)
Offered by Plaintiffs
*McDowell v. Credit Bureaus*
Also patterned after
*Dun & Bradstreet, Inc., v.*
*Greenmoss Builders, Inc.*
53 LW 4866 (1985); —— U.S.S.Ct. ——
(1985)
(Verdict Director)

### INSTRUCTION NO. C

Your verdict must be for plaintiff if you believe:

First, defendant published a credit report and/or credit bulletins containing the statement plaintiffs were bankrupt, and

Second, Defendant was at fault in publishing such statement, and

Third, such statement tended to deprive the plaintiff of the benefit of public confidence and social associations, and

Fourth, such statement was read by members of the public, and

Fifth, Plaintiffs' reputations were thereby damaged.

### INSTRUCTION NO. D

If you find the issues in favor of plaintiffs, then you must award plaintiffs such sum as you believe will fairly and justly compensate plaintiffs for any damages you believe they sustained and are reasonably certain to sustain in the future as a direct result of the publishing of the false credit report and/or false credit bulletins stating the plaintiffs had filed for bankruptcy as mentioned in the evidence.

If you find the issues in favor of plaintiffs, and if you believe that defendant published the false credit report and/or false credit bulletins with knowledge that it was false or with reckless disregard for whether it was true, then in addition to any damages to which you find plaintiffs entitled under the foregoing paragraph, you may award plaintiffs an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter it and others from like conduct.

The trial court found that respondent was entitled to a qualified privilege. If the qualified privilege applies, the plaintiff must then prove that the statement was made "with knowledge that it was false, or with reckless disregard for whether it was true or false at a time when defendant had serious doubt as to whether it was true." MAI 23.06(2). Appellants' instructions did not conform to MAI 23.06(2) and the trial court refused instructions B, C, and D.

## II

■ Appellants claim the trial court erred in refusing to instruct the jury on the credit report without submitting the defense of qualified privilege. Appellants claim that current Missouri Approved Instructions incorporate federal constitution-

al principles which no longer apply in a libel case in which a private plaintiff sues non-media defendant regarding a matter of private concern. Appellants also argue that the qualified privilege should be abrogated because the proving of malice is too confusing and onerous.

A communication is held to be qualifiedly privileged when it is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty, although it contains matter which, without such privilege, would be actionable. Upon such occasion and under such circumstances, although the matter communicated is defamatory and false, the law will not infer malice, but the existence thereof must be shown by some evidence beyond the falsity of the statements communicated. * * *

*Estes v. Lawton–Byrne–Bruner Insurance Agency Co.,* 437 S.W.2d 685, 690 (Mo. App.1969) (citations omitted). A qualified privilege has been applied to credit reporting agencies, or mercantile agencies, if the agency communication is made to a subscriber having an interest in the financial position of that business or individual. *Mitchell v. Bradstreet Co.,* 116 Mo. 226, 22 S.W. 358, 360 (1893); *Minter v. Bradstreet Co.,* 174 Mo. 444, 73 S.W. 668 (1903); Annotation, *Libel and the Slander Report of a Mercantile Agency as Privileged,* 30 A.L. R.2d 776 (1953); Smith, *Conditional Privilege for Mercantile Agencies,* 14 Colum.L. Rev. 187 (1914). At common law, to overcome the qualified privilege the plaintiff had to prove malice-in-fact "that is, that the defendant was actuated by ill-will in what he did and said with a design to causelessly or wantonly injure the plaintiff." M. Newell, Slander and Libel, § 277 (4th ed. 1924). In *Minter,* this Court stated that a plaintiff had to prove malice, which meant "that the report in question was prepared and published, not in good faith, but with an intent to injure plaintiffs, or with a willful and wanton neglect of the rights and interest of the plaintiffs." *Minter,* 73 S.W. at 676, 683. Merely proving negligence does not

satisfy the malice requirement because negligence does not constitute willfullness, reckless disregard of others' rights or actual presence of an improper motive to injure. *Estes,* 437 S.W.2d at 693.

The Missouri Supreme Court Committee on Jury Instructions incorporated this definition of malice in MAI 23.06(1964) which required paragraph Fourth to be used if the qualified privilege was raised "that such statement was [written] [printed] [knowing it to be false] or [without knowing whether it was true or false in reckless disregard for the plaintiffs rights], and with the intent to damage the plaintiff." Current Missouri approved jury instructions require that in a libel case, if the court determines that a qualified privilege applies, MAI 23.06(2) must be used. MAI 23.06(2) instructs the jury that a plaintiff must prove that the defendant published the statement "with the knowledge that it was false, or with reckless disregard for whether it was true or false at a time when defendant had serious doubt as to whether it was true." Appellants claim this instruction incorporates federal constitutional principles that are no longer applicable in this case. Appellants rely on *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985).

In *Greenmoss,* the plaintiff sued a credit reporting agency for incorrectly reporting that plaintiff filed for bankruptcy and other gross misrepresentations of financial information. *Greenmoss,* 472 U.S. at 751, 105 S.Ct. at 2941. The report was sent to five subscribers who were required to keep the information confidential. *Id.* Vermont law, applicable in *Greenmoss,* did not have a qualified privilege for credit reporting agencies. *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.,* 143 Vt. 66, 461 A.2d 414, 419 (1983). The trial court ordered a new trial because the instructions did not satisfy the standard set forth in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974). The issue before the Court was whether Greenmoss had to prove malice to recover presumed and punitive damages when the subject matter of the communica-

tion was of a private concern. The jury found for the plaintiff and awarded presumed and punitive damages, without finding malice. *Id.* 472 U.S. at 752, 105 S.Ct. at 2942. The opinion by Justice Powell stated "that permitting recovery of presumed and punitive damages in defamation cases absent a showing of 'actual malice' does not violate the First Amendment when the statements do not involve matters of public concern." *Id.* at 763, 105 S.Ct. at 2948. The *Greenmoss* decision does not mandate that we abrogate the qualified privilege for credit reporting agencies.

Using MAI 23.06(2) does not necessarily mean that appellants' burden of proof was based on constitutional principles. In *Snodgrass v. Headco Industries, Inc.*, 640 S.W.2d 147 (Mo.App.1982), the court was confronted with a similar argument. The defendant in a slander suit complained that MAI 23.10(2) (an instruction similar to MAI 23.06(2)) utilized language from *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), which the defendant claimed was improper definition for actual malice. *Id.* at 154. The court noted that there was considerable confusion over the proper terminology regarding the type of malice necessary to overcome a qualified privilege, but concluded that:

> The drafters of the MAI were undoubtedly aware of the vast confusion surrounding the many terms used to describe different degrees of malice, and thus the MAI used only one term "malice", and has but one definition for the term in MAI 16.01 *i.e.* "the doing of a wrongful act intentionally without just cause or excuse." MAI 23.10(2) does not use the *New York Times* term "actual malice", even though it uses the Court's language defining that term. Thus, any confusion arising from the use of the term in other contexts was avoided. If this court were to adopt defendant's position, that confusion would be multipled rather than avoided. The care taken by the Supreme Court Committee on Jury Instructions is evident from the comprehensiveness of the instructions on libel and slander....

> The MAI provisions are consistent, well drafted, and in line with the federal and state law concerning both qualified privilege and punitive damages.

*Id.* The uniform instructions were drafted to end the confusion.

This Court has continued to recognize a qualified privilege for oral statements made to a lender regarding an employee. *Carter v. Willert Home Products, Inc.*, 714 S.W.2d 506 (Mo. banc 1986). We believe that credit reporting agencies are entitled to a qualified privilege to assure that they can continue to provide the rapid flow of credit information required by today's demanding economy.

### III

■ Appellants next claim that if either offered instructions B or C was given, appellants would be entitled to motion for directed verdict, or in the alternative, if the qualified privilege existed, they still would have been entitled to a motion for a directed verdict. In a defamation case, Art. I, § 8 of the Missouri Constitution prohibits a directed verdict in favor of a plaintiff. *Cf. Lupkey v. Weldon*, 419 S.W.2d 91 (Mo. banc 1967).

The trial court did not err in refusing to give tendered instructions B, C and D.

The judgment of the trial court is affirmed.

BILLINGS, C.J., and BLACKMAR, ROBERTSON and HIGGINS, JJ., concur.

RENDLEN, J., dissents.

DONNELLY, J., dissents in separate opinion filed.

DONNELLY, Judge dissenting.

In *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court sought to constitutionalize the law of defamation in the States. It held that a public official may not recover "damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice—that is, with

knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S., at 279–280, 84 S.Ct. at 726.

In *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) and *Associated Press v. Walker*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Court extended the actual malice standard to include "public figures."

In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Court reaffirmed the actual malice standard for public officials and public figures but held that for private figures the States could establish their own standards of liability for defamation so long as fault is an essential element and so long as recovery of presumed or punitive damages is not permitted absent proof of actual malice.

In *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 763, 105 S.Ct. 2939, 2948, 86 L.Ed.2d 593 (1985), an opinion by Justice Powell stated "that permitting · recovery of presumed and punitive damages in defamation cases absent a showing of 'actual malice' does not violate the First Amendment when the defamatory statements do not involve matters of public concern." Rehnquist and O'Connor, JJ., concurred. Burger, C.J., and White, J., concurred in the judgment. Brennan, Marshall, Blackmun and Stevens, JJ., dissented.

In such confusing circumstance[1], I would turn to the Constitution of Missouri which provides "that every person shall be free to say, write or publish, or otherwise communicate whatever he will on any subject, being responsible for abuses of that liberty * * *." Mo. Const. art. I, § 8; *see* Mo. Const. art. XIII, § 16 (1820).

In constructing a Missouri constitutional model, I am reminded that "freedom of speech is guaranteed to the individual and newspaper by the Constitution. Courts are charged with the duty they may not pretermit, to see to it that it is not abridged. It is, however, the use, and not the abuse of free speech and free press that is guarded by the fundamental law as sacred." *Diener v. Star–Chronicle Publishing Company*, 230 Mo. 613, 629, 132 S.W. 1143, 1148 (banc 1910).

In 1927, Justice Brandeis expressed the view that "[p]rohibition of free speech and assembly is a measure so stringent that it would be inappropriate as the means for averting a relatively trivial harm to society." *Whitney v. California*, 274 U.S. 357, 377, 47 S.Ct. 641, 649, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring). I agree. In similar vein, I believe that a model for the tort of defamation which *excessively* inhibits free expression by threat of penalty is a form of prior restraint on the right to communicate and is prohibited by our Constitution.

Given the intense concern for freedom of expression articulated in our Constitution, I believe that a "defendant who has abused the right of free expression by defamatory statements may be held responsible only to the extent of permitting the injured party to recover for the resulting injury to reputation—that is, to recover compensatory damages." *Wheeler v. Green*, 286 Or. 99, 593 P.2d 777, 788 (1979). I believe "that the possibility of excessive and unbridled jury verdicts, grounded on punitive assessments, may impermissibly chill the exercise of * * * [the right to speak freely] by promoting apprehensive self-censorship."

---

1. Beginning in the years of Chief Justice Warren, the Court has sought, with unblinking support from academia and the media, to direct social policy in America. Its majority has forgotten that the genius of our constitutional system lies in its basic reliance on the concept of democracy and the diversity of input it provides.

  The Court plays a necessary role when it protects "discrete and insular minorities." *United States v. Carolene Products Co.*, 304 U.S. 144,

152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938).

  But, as with *New York Times,* other Court attempts at nationalization must invariably fail because they violate the integrity of process implanted in our Constitution. *See* A. Bickel, *The Morality of Consent* 120–21 (1975). Such integrity of process derives, of course, from the fundamental concept that the people, not the Court, are sovereign.

*Stone v. Essex County Newspapers, Inc.,* 367 Mass. 498, 330 N.E.2d 161, 169 (1975).[2]

Accordingly, I would hold:

*First,* one who publishes a false and defamatory communication concerning a public or private person or figure in regard to matters of public or private concern is subject to liability for defamation, if, but only if, he

(a) knows that the statement is false and that it defames the other person, or

(b) acts in reckless disregard of these matters.

*See* Restatement (Second) of Torts § 580A, at 214 (1977); MAI3d 23.06(2).

*Second,* punitive damages may not be assessed in cases involving the tort of defamation.

I respectfully dissent.

**2.** *See* Anderson, *Reputation, Compensation and Proof,* 25 Wm. & Mary L.Rev. 747, 749 (1984); Van Alstyne, *First Amendment Limitations on Recovery from the Press—An Extended Comment on "The Anderson Solution,"* 25 Wm. & Mary L.Rev. 793 (1984); Franklin, *A Critique of Libel Law,* 18 U.S.F.L. Rev. 1 (1983–84).