**David and Donna McDOWELL,
Appellants,**

v.

**Kenneth WALDRON and Scott
Walter, Respondents.**

No. 67511.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 5, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1996.

Ilona S. Leavitt, Chesterfield, Burton H. Shostak, Moline & Shostak, Clayton, for appellants.

Brent W. Baldwin, Hinshaw & Culbertson, St. Louis, John P. Heisserer, Dickerson, Rice, Spaeth, Heisserer & Summers, Cape Girardeau, for respondents.

SIMON, Judge.

David and Donna McDowell, appellants, appeal the granting of summary judgment in favor of Kenneth Waldron (Waldron) and Scott Walter (Walter), respondents, in a legal malpractice action brought pursuant to § 516.120 RSMo.1992 (all further references shall be to RSMo.1992 unless otherwise noted).

On appeal, appellants contend that the trial court erred in granting summary judgment because: 1) the statute of limitations for bringing the current legal malpractice action had not expired; 2) respondents' fraudulent concealment of their legal malpractice tolled the running of the statute of limitations; 3) appellants did not have actual knowledge of respondents' malpractice; 4) disputed facts exist concerning witness credibility; 5) the final order granting summary judgment was deficient; 6) appellants had a valid underlying claim under the Fair Credit Reporting Act which respondents did not timely file; 7) respondents' motion for summary judgment is barred by the doctrine of waiver or an admission against interest; 8) respondents' motion for summary judgment is barred by collateral estoppel; 9) respondents' motion for summary judgment is barred by res judicata; and 10) respondents should not profit by their own wrongdoing. We affirm.

Respondents filed motions to strike appellants' statement of facts and jurisdictional statement. These motions were ordered taken with the case and we deny same.

When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376[1–3] (Mo. banc 1993). However, summary judgment is proper where the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 380–381. Furthermore, where the movant is a "defending party" and does not bear the burden of persuasion at trial, that party need not controvert each element of the non-movant's claim in order to establish a right to summary judgment. *Id.* at [16]. Rather, a "defending party" may establish a right to judgment by showing facts that negate any one of the elements facts of claimant's claim. *Id.* If the movant meets this burden, the non-movant may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Rule 74.04, shall set

forth specific facts showing that there is a genuine issue for trial. *Id.;* Rule 74.04(e).

In their action for legal malpractice appellants allege that attorney Waldron allowed the two-year statute of limitations to run on their Fair Credit Reporting Act (FCRA) claim against the Credit Bureau of Southeast Missouri, Inc. (Credit Bureau), and they were subsequently damaged by the continuing concealment of said malpractice by both Waldron and his partner Walter. Appellants' FCRA claim is based on a report dated April 6, 1982, in which Credit Bureau falsely reported the McDowells as having jointly filed bankruptcy. The report was based upon the bankruptcy of a woman with a similar name.

The facts are as follows. In November, 1991, John and Shelby Gilmore entered into a contract with appellants for the purchase of a home built by appellants in one of the subdivisions they developed. In order to secure the purchase of the house, the Gilmores sought financing from Colonial Federal Savings and Loan Association (Colonial). Colonial then contacted Credit Bureau to perform a credit check to ensure that appellants' title to the house was free and clear of all encumbrances so that clear title could be conveyed to the Gilmores. Responding on April 6, 1982, Credit Bureau issued the report to Colonial, which erroneously indicated that appellants had filed for bankruptcy in March, 1982.

Appellants, through another attorney, filed an action in federal court against Credit Bureau alleging common law defamation and violation of the FCRA. Later, appellants changed attorneys and hired Waldron. On May 23, 1984, Waldron voluntarily dismissed the FCRA claim against Credit Bureau. The two-year FCRA statute of limitations had run. Thereafter, on May 31, 1984, the action was re-filed in state court and was pursued on the common law basis of defamation, libel, and violation of the FCRA. The claim was submitted to the jury only upon the theories of defamation and libel. Waldron did not submit the FCRA claim to the jury because he learned during trial that the federal dismissal had, in effect, extinguished the FCRA claim. There is no savings statute for FCRA claims. The jury returned a verdict in favor of Credit Bureau. The judgment was affirmed in *McDowell v. Credit Bureaus of S.E. Mo.,* 747 S.W.2d 630 (Mo. banc 1988). Appellants then hired another attorney, John Oliver (Oliver), to petition for a writ of certiorari to the United States Supreme Court. In August of 1988, opposing counsel filed a brief in opposition to the writ petition, including a paragraph stating that appellants' previously dismissed FCRA claim was time-barred. Respondents contend that this paragraph put appellants on notice as to Waldron's and Walter's alleged malpractice, since Oliver received a copy of the brief in opposition. Appellants claim that they were not told about the brief and/or did not receive a copy of the brief until January 12, 1991. On February 28, 1992, appellants filed the present action against Waldron and on January 10, 1994, appellants joined Walter as a defendant.

Waldron filed a motion for summary judgment alleging that appellants' claim should be dismissed because they never had a valid FCRA claim in the underlying action since the false Credit Bureau report was a "business report" and not a "consumer report"; therefore, it was not covered by the FCRA. In support of his motion, Waldron made specific references to the pleadings and transcript. Walter joined in this motion. Appellants responded to the motion for summary judgment and in support filed the affidavit of an employee of Credit Bureau stating that the credit report concerning appellants is a "consumer report," and the affidavit of trial counsel stating what evidence would be adduced at trial. Walter also filed a motion to dismiss claiming that the statute of limitations had expired with respect to appellants' claim against him. Appellants responded to the motion to dismiss by contending: a) Walter's alleged malpractice was not capable of ascertainment until January 12, 1991 when they received copies of opposing counsel's brief in opposition to their petition for writ of certiorari; b) the statute of limitations was tolled until appellants had actual knowledge of Walter's alleged malpractice because Walter and Waldron were both fiduciaries of appellants and had fostered a layman/expert relationship; and c) respondents' fraudulent

concealment of their malpractice tolled the running of the statute of limitations. In support, appellants attached their affidavits alleging that they did not receive a copy of the brief in opposition until January 12, 1991. The motion for summary judgment and the motion to dismiss were granted.

■ Initially, we shall address appellants' sixth point wherein appellants contend that the trial court erred in granting respondents' motions for summary judgment because appellants had a valid FCRA claim which was dismissed in federal court by Waldron after the statute of limitations had run, and despite that there was no savings statute to permit its subsequent filing in state court. Furthermore, they assert Waldron and Walter concealed this fact from appellants.

■ To prevail in a legal malpractice action, four elements must be pled and proven: (1) that an attorney/client relationship existed; (2) that the attorney acted negligently or in breach of contract; (3) that such acts were the proximate cause of plaintiff's damages; and (4) but for attorney's conduct, the plaintiff would have been successful in the prosecution of his underlying claim. *Boatright v. Shaw*, 804 S.W.2d 795, 796[1, 2] (Mo.App. 1990).

Respondents' motion for summary judgment contends that appellants failed to show they have a valid FCRA claim because the false credit report was issued regarding the Gilmore/Colonial transaction, and therefore, was a "business report" and is not covered by the provisions of the FCRA. Appellants agree that the false report was issued to Colonial regarding their business transaction with the Gilmores, but that the information in the report was collected to report on the personal credit worthiness of the individual misidentified as appellant Donna McDowell; therefore, the report is a "consumer report" covered by the FCRA and can not be converted into a "business report" by its subsequent use in the Gilmore/Colonial Federal transaction. Responding, appellant's counsel filed her affidavit stating various issues and evidence which would be presented at trial, and an affidavit of an employee of Credit Bureau stating the report is a "consumer report."

■ State law controls matters of practice and procedure, but substantive rights created by the FCRA are controlled by federal law and are not subject to 50 different rules of interpretation. *Thornton v. Equifax, Inc.*, 619 F.2d 700, 705[4, 5] (8th Cir.1980).

■ The FCRA became effective in 1971. Its provisions provide for the protection of the reputation of the consumer while recognizing the legitimacy of credit reports as a necessary adjunct of commerce for consumer credit, personnel matters, insurance and other needed information. *Id.* at [1]. In enacting the FCRA, Congress sought to regulate the dissemination of information used for consumer purposes, not business purposes. *Matthews v. Worthen Bank & Trust Co.*, 741 F.2d 217, 219 (8th Cir.1984). The FCRA provides for civil liability when a consumer reporting agency fails to comply with any of its requirements. 15 U.S.C. §§ 1681n and 1681o (1992). To state a claim under the FCRA, the false credit report must be a "consumer report" and not a "business report." 15 U.S.C. § 1681 *et seq.* (1992). The relevant sections of the FCRA which define a "consumer report" are as follows:

§ 1681a.  **Definitions; rules of construction**

(b) The term "person" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.

(c) The term "consumer" means an individual.

(d) The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living which is used or expected to be **used or collected in whole or in part** for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes

authorized under § 1681b of this title. (emphasis added).

### § 1681b. Permissible purposes of consumer reports

A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe—

> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

> (B) intends to use the information for employment purposes; or

> (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

> (E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

Federal courts have consistently held that the proper focus for determining whether a report falls under the FCRA's definition of "consumer report" is the purpose for which it was collected, and not solely the purpose for which it was released. *Ippolito v. WNS, Inc.*, 864 F.2d 440, 453[11] (7th Cir.1988); *Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 693, · 696[1, 2] (10th Cir.1980). Therefore, judicial inquiry into the motives of Credit Bureau is proper because it "collects" the information. *Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d at 696[1, 2]. Similarly, the term "expected to be used" in § 1681a(d) would seem to refer to what

Credit Bureau believed. *Id.* Furthermore, the character of a "consumer report" may not be changed by its subsequent use for a non-consumer purpose. *Ippolito v. WNS, Inc.*, 864 F.2d at 453[11].

Here, the record reveals that the credit report was first collected when Colonial contacted Credit Bureau to perform a credit check to ensure that appellants' title to the home they built as part of their business was free of all encumbrances and that clear title could be conveyed to the Gilmores. Responding to that request, Credit Bureau issued the report to Colonial on April 6, 1982. For the report to be a "consumer report," it must have been "used or collected in whole or in part" for the purposes set forth in § 1681a(d)(1–3). Clearly, § 1681a(d)(1–2) do not apply because the report was neither used or collected to serve as a factor in establishing appellants' eligibility for personal credit, insurance or employment. Furthermore, the report does not fall within the purposes of § 1681a(d)(3), which refers to § 1681b. Here, the report did not involve extension of credit to appellants under § 1681b(3)(A), employment of appellants under § 1681b(3)(B), insurance of appellants under § 1681b(3)(C), or license of appellants under § 1681b(3)(D). Although § 1681b(3)(E)'s reference to "legitimate business need" seems to make the term "consumer report" all-encompassing, federal courts have held that when § 1681b(3)(E) is used for the threshold purpose of defining whether a report is a "consumer report" in the first place, then the term "legitimate business need" must be read as being limited to one of the purposes listed in § 1681b(3)(A–D), or § 1681a(d). *See Houghton v. New Jersey Manufacturers' Ins. Co.*, 795 F.2d 1144, 1149 [3–5] (3rd Cir.1986). As previously stated, the report does not fall within the purposes of § 1681a(d) or § 1681b(3)(A–D), and consequently, § 1681b(3)(E) does not apply. *See Houghton, supra.* Here, the record indicates that the report was collected for a non-consumer purpose, i.e., the verification of appellants' ability to convey clear title to the house in the course of their business.

Appellants contend that the information contained in the report was collected on

March 25, 1982, and was subsequently used in the Gilmore/Colonial transaction on April 6, 1982; therefore, the report can not be transformed from a "consumer report" into a "business report" by its subsequent use in the business transaction. To support this contention, appellants rely on the opinion of this Court in the underlying case against Credit Bureau, *McDowell v. Credit Bureaus of S.E. Mo.*, 747 S.W.2d 630 (Mo. banc 1988). Here, the underlying case was transferred to our Supreme Court, and the Court reviews the case as though on original appeal, and the opinion of the Court of Appeals is of no precedential effect. Rule 83.09; *Carroll v. Loy–Lange Box Co.*, 829 S.W.2d 86, 90 [8] (Mo.App.1992). Therefore, the record does not support appellants' contention.

■■■■■ Furthermore, the two affidavits filed by appellants are insufficient to defeat respondents' motion for summary judgment. The first is an affidavit of counsel setting forth various items of evidence that appellants would produce at trial. However, conclusional allegations as well as statements that a party will provide evidence of genuine fact issues at trial are insufficient to defeat a motion for summary judgment. *A & M Building, Inc., v. Wiles*, 859 S.W.2d 183, 187 [7–9] (Mo.App.1993). The party must show that a genuine issue of fact does exist, not that it might exist. *Id.* As a result, the first affidavit is insufficient to defeat respondents' motion.

■■■■■ The second affidavit submitted by appellants is of an employee of Credit Bureau which states that the report issued regarding appellants is a "consumer report." However, the proper function of an affidavit is to state facts. *Channing v. Brindley–Sullivan, Inc.*, 855 S.W.2d 463, 466 [9–11] (Mo.App.1993). Furthermore, conclusory allegations in affidavits are insufficient to raise questions of fact in a motion for summary judgment. *Id.* Here, the affidavit states only general conclusions, does not refer to the FCRA or the elements and/or definitions of a "consumer report," or the affiant's knowledge of the FCRA or its definitions. As a result, it does not set forth facts sufficient to defeat respondents' motion for sum-

mary judgment. *See Channing, supra.* Point denied.

■■■■ Next, we shall address appellants' seventh point. Appellants contend that the trial court erred in granting respondents' motions for summary judgment because the equitable doctrine of waiver or an admission against interest prohibit respondents from denying a valid FCRA claim existed in the underlying action. Specifically, appellants contend that by filing the FCRA claim in state court, the Missouri Rules of Professional Conduct—which state that an attorney should only bring meritorious claims—prohibit respondents from denying the validity of the underlying FCRA claim.

In the comment to Rule 3.1 of the Missouri Rules of Professional Conduct, our Supreme Court states:

> The advocate has a duty to use legal procedure for the fullest benefit of the client's cause ... Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail.

Here, appellants have not cited any cases wherein it has been held that in a legal malpractice claim, positions taken by an attorney on behalf of his client constitute admissions against his interest. Clearly, it would be manifestly unfair to charge a lawyer with the duty to zealously assert positions which he does not believe will ultimately prevail, and then contend that he is bound by those arguments when sued by his client. Point denied.

■■■■ Next, we shall address appellants' eighth and ninth points. Appellants contend that the trial court erred in granting respondents' motions for summary judgment because said motions are barred by res judicata and/or collateral estoppel due to the overruling of motion for summary judgment in the underlying case against Credit Bureau, *McDowell v. Credit Bureaus of S.E.Mo.*, 747 S.W.2d 630 (Mo. banc 1988).

■■■■ We consider the following in determining whether res judicata applies: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom

the claim is made. *Gardner v. City of Cape Girardeau,* 880 S.W.2d 652, 655 [6, 7] (Mo. App.1994). Here, the record reveals that identical issues and causes of action were not addressed in the underlying motion for summary judgment. A review of the underlying motion reveals that it was phrased in very general terms, and concerned a petition which pled both a violation of the FCRA, common law defamation and libel. Nowhere in the motion is the FCRA violation specifically raised, and the motion does not suggest that the FCRA claim be dismissed. The only issue raised in the underlying motion was knowledge of appellants regarding the release of false information, and did not concern itself with whether that pertained to the FCRA claim. Point denied.

■ Furthermore, four elements must be satisfied in order for collateral estoppel to apply: 1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; 2) whether the prior adjudication resulted in a judgment on the merits; 3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and 4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue. *Gardner v. City of Cape Girardeau,* 880 S.W.2d 652, 655 [4] (Mo.App.1994). As previously stated, the underlying motion for summary judgment did not deal with the same issues as respondents' current motion for summary judgment. Point denied.

■ Next, we shall address appellants' fifth point. Appellants contend that the trial court's order granting summary judgment is not valid because it did not state that no genuine issue of material fact existed and that respondents were entitled to judgment as a matter of law. Furthermore, the order did not set forth any findings of fact.

Here, the trial court's order granting respondents' motion for summary judgment did not state its reasons for so doing; therefore, it is presumed to have based its decision on the grounds specified in respondents' motions. *See Brinson v. Whittico,* 793 S.W.2d 632, 633 [1] (Mo.App.1990). Furthermore, the record does not reveal any request by appellants for findings of fact or a brief opinion containing the grounds for the trial court's decision as required by Rule 73.01(a)(3). Point denied.

As a result, it is not necessary to address appellants' remaining points on appeal. Therefore, since the credit report does not fall within any definition of "consumer report" under the FCRA, the trial court did not err in granting respondents' motion for summary judgment.

Judgment affirmed.

CRANE, C.J., and AHRENS, J., concur.